Opinion of the court, by
Judge Sherman :
The first question which arises from the pleadings and proofs in this case is, had the administrator, with the will annexed, of the estate of J. Parker, power, by virtue of said will, his appointment, and the statute of Virginia, to make the contract set forth *116 in the bill for the sale to the complainant of the lands in controversy.
The clause in the will of J. Parker, creating the power to sell these lands, is in these words: “I constitute and appoint my grandson-in-law, Joseph Baker, of the county of Nancemond, my executor to this, my last will and testament, with full power to dispose of all my lands in the States of Ohio and Kentucky.”
Joseph Baker, the executor named in the will, appeared in the proper court in Yirginia, and refused to accept the trust, or qualify himself to act as executor; and thereupon, J. B. Baker, was, by the same court, duly appointed administrator with the will annexed, of the estate of the decedent, Parker.
By an act of the legislature of Yirginia, passed in 1792, it is provided that where lands are devised to be sold and convoyed, and the executors named in such will shall not qualify, or die before the sale and conveyance of the lands, then,-in either case, the sale and conveyance shall be made by such person to whom adminis? tration of the testator’s estate, with the will annexed, shall be granted.
In April, 1815, Baker, administrator, with the will annexed, of the estate of the decedent Parker, entered into a contract to sell and convey to complainant the land now in controversy, being part of the estate of the testator, Parker, *that the executor was authorized by the will to sell, and the bill seeks to have that contract executed by a conveyance of the lands.
It is a general and well-settled rule, both in law and equity, that a power given by will to'the executor to sell and convey land, is to be considered as a personal trust. In contemplation of law, the power is given in consequence of the confidence which the testator had in the judgment, discretion, and integrity of the executor, and the execution of that power can not, by the executor, be delegated to any other person. 3 East, 410; 4 Johns. Ch. 368; 2 Sch. & Lef. 330. It would be absurd to suppose that the confidence which the testator had in the knowledge and integrity of his executor, and which induced him to confide to such executor the power of selling and conveying his lands, could extend to unknown persons. To render a sale, under such a power, good and valid, the executor must personally assent and act; and upon this principle it has been held that a joint authority, given to two ex *117 ecutors, can only be exercised by the joint act of both, and is determined by the death of one.
• But it is said that the appointment of the administrator, with the will annexed, did, by force of the statute of Virginia, confer upon such administrator ail the authority which the executor, named in the will, could legally exei’cise over the lands in Ohio. To the correctness of this proposition we can not assent. The executor derives his power from the testator, whose right it was to sell and convey or otherwise dispose of his estate, and who mayj and usually does, limit the extent of the authority of his executor, and direct the time, place, and manner in which it shall be exercised. He acts as the trustee of the testator, to fulfill his intentions, and be governed by his directions, possessing no power over real estate, but such as is expressly given by the will. A person in whose favor the power has been executed, takes in the same manner as if the instrument executing the power had been contained in that given in it. Marlborough v. Godolphin, 2 Ves. 78. He makes his title under the power itself; and, for many purposes, the act of the trustee executing the power is in equity considered as the act of the party creating the power.
*But the very appointment, as well as the power of an administrator over the estate of a decedent, emanates from the laws of the country where he receives his appointment. The extent of his authority, and the manner in which it shall be exercised, depend upon legislative enactments, and is confined to the jurisdiction of the country granting the administration. Doe v. McFarland, 9 Cranch, 151. An administrator, as such, can not intermeddle with the effects of his intestate in another state, unless permitted to do so by the laws of that state; otherwise it would be in the power of one state to regulate the distribution of property situated in another. And the rule is the same, whether the administration be general or with the will annexed. In either case the authority of the administrator emanates from the law, and can not extend beyond the jurisdiction of the power conferring the authority; and the will- being annexed to the grant of administration, does not change the tenure by which the administrator holds his office. The right which the administrator, Baker, had to intermeddle with any part of the estate of the testator, Barker, even' in Virginia, was not derived from any appointment of, or power conferred on him by the testator, but from the *118 ■laws of Yirginia, and an appointment of him. by the proper court, in that state, as administrator, with the will annexed, of Parker’s •estate.
His power over the estate, real and personal, of the testator, within that state, was fixed and defined by the laws thereof, and to those laws only could he look to protect him in the due exercise of the authority they had conferred.
The owner of lands, wherever he may reside, has an unquestionable right to sell and convey them, in whichsoever state they may be situated, by pursuing the mode prescribed by lex loci rei sitae, and he can give by deed or will this power to another. But it is not in the power of any state, by any legislative act, to prescribe the mode in which lands in another state may be disposed of, or the title thereto pass from one person to another. United States v. Crosby, 7 Cranch, 115.
In Kerr v. Moon, 9 Wheat. 565, the Supreme Court of the United States say: “It is an unquestionable principle *of general law that the title to, and the disposition of, real property, must be exclusively subject to the laws of the country where it is situated.” And in McCormick v. Sullivant, 10 Wheat. 192, and Darby v. Moyer, 10 Wheat. 465, the same principle is recognized and enforced in the case of lands in one state disposed of by will made in another.
At the time when the administrator of Parker’s estate contracted with complainant to sell and convey to him the lands in controversy, the laws of Ohio authorized an administrator to sell lands of the decedent only for special purposes, upon a regular application to, and an order to sell by, the court of the county where the lands were situated.
To give validity to the sale of these lands, and consider it binding on the devisee, we must necessarily recognize the right of another state to prescribo a mode in which real property in Ohio may be disposed of, different from that prescribed by her own laws.
The conferring of power upon a person to sell and convey the lands of another without his consent, is an act of sovereignty, and can only be exercised by the government of the country whore the lands are situated; and at the time when the contract was made, which the complainant seeks to have executed, by a conveyance to him of the lands, there was no law of Ohio authorizing *119 administrators, with the will annexed, whether appointed by her own courts or those of another state, to sell or convey lands directed by the will to be sold or conveyed. And it is perfectly clear that had the will of Parker been originally proven and recorded in this state, and administration thereon granted by our courts, such administrator would have had no authority to make the contracts set forth in the bill.
If Baker, as administrator, with the will annexed of Parker’s estate, can legally sell or convey those lands, it is not by virtue of any power conferred on him by the testator — for he is unknown to the will — nor from any authority derived from the laws of Ohio, where the lands are situated — for those laws did not authorize such a sale — but from the laws of Yirginia, where administration was granted.
The law of Yirginia empowers the administrator with the will annexed, to sell and convey lands directed by the *will to be sold, and when, in pursuance of this legal power, a convéyance has been made by such administrator, the purchaser holds his title under the law giving the power; and if the land is within the jurisdiction of the state authorizing such conveyance, his title would be perfect; and it would be equally so if there was no will, but the administrator was authorized by law to sell real estate. In either case the power of the administrator is derived from the law, and the purchaser would make his title under the law. The law would be the instrument creating the power, the deed of administrator the instrument executing it, and the validity of the latter would depend upon its compliance with the terms, conditions, and limitations of the former.
But if the real property sold be situated without the jurisdiction of the state authorizing it, the sale will be inoperative, and the purchaser will not acquire any interest by the administrator’s deed to him. In Nowler et al. v. Coit, 1 Ohio, 519, this court held that a sale and conveyance of lands in this state, made under the order of a court of probate in Connecticut, was inoperative and void, and that the title remained untouched, in the heirs to whom it descended.
The case of Doolittle v. Lewis, 7 Johns. Ch. 48, relied on by the complainant as an authority, that a power given to sell lands may be executed by a person not named in the deed creating the power, and that courts will recognize administrators as such, *120 although appointed in another state, is not analogous to this ease. The chancellor in that ease sustained a sale by an administrator, appointed by the proper court in Yermont, made in conformity to the laws of New York, of mortgaged premises situated there, under a power contained in the mortgage deed to the mortagee, his executors, administrators, or assignees, upon failure of payment to sell — the court holding that as the administrator was named in the deed, his power to sell was derived from the deed, the act of the mortgagor, and that it was immaterial where the appointment was made, as the administrator derived no authority to sell the lands in New York, from the court or jui’isdiction appointing him, but from the express appointment of the mortgagor. The principle *upon which the chancellor proceeded in making his decree in that case is, that where there is, in the instrument creating the power, an express declaration that the power is not confined to an individual named, but may pass to others as his executors or administrators, the court can not reject these words in the instrument, but will consider the power as legally vested in the person who may happen to answer the description or sustain the character given in the instrument creating the power.
Whenever a power is of a kind that indicates personal confidence, it must, in equity as well as at law, be considered to be confined to the individual to whom it is given, and will not, except by express words, pass to others than the trustees originally named; though they.may, by legal transmission, sustain the same character. 16 Ves. 27.
In the will of J. Parker there is no provision that in case of the death or refusal to act of the executor, the power given him to sell the lands in Ohio should pass to others. None are nominated, either by name or character, upon whom the power conferred on the executor, was, upon any contingency, to devolve. And the will furnishes indications, other than the nature of the power, that the testator reposed a personal confidence in his executor.
Where the will confers a mere power of selling, or otherwise disposing of property, or of selecting the individual who is to enjoy the testator’s bounty, and the power is not executed by the person nominated, a court.of chancery can not execute it; but where a trust is created and power given to the trustee, which it is his duty to execute, he is considered as a trustee of the *121 power, and not as having a discretion to exercise it or not; and neither the negligence nor death of the trustee, or other circumstances, will be permitted by this court to defeat the interests of those for whose benefit it was his duty to execute it. Brown v. Higgs, 8 Ves. 561. But the court will execute such a power upon the application of those only who have an interest in the trust fund given by the will enacting the trust. It is for the purpose of effecting the intent of the testator, which would otherwise be defeated, and to secure the interests of those who are strictly cestuy que trusts, that a *court of equity will execute a power coupled with a duty to execute, when the party, to whom that power was given, has failed to discharge the duty imposed on him. It does not so alter the nature of the power as to make it transmissible by the trustee, or by operation of law.
The testator, Parker, gave his executor power to sell his lands in Ohio, who declined accepting the trust, or executing the power. If the power had been coupled with a trust, and it was necessary that the power to sell should be executed to effectuate the intention of the testator in favor of cestuy que trusts upon a proper application by them to a court of chancery, such sale would be directed on the ground that the power to sell was coupled with a trust which can never fail for want of a trustee. If such cestuy que trusts had applied to a court of chancery in Virginia, who had ordered a sale of testator’s lands, it could not be pietended that the purchaser at such sale would thereby acquire a title to the lands in Ohio. The decree of the chancellor in Virginia might have ascertained and determined the rights of the parties, but could not divest the title of the heir or devisee to lands in Ohio.
In this case, no cestuy que trusts are seeking the execution of the power to sell, as the only means to secure any benefit intended them by the will, but a purchaser from the administrator with the will annexed, who claims that, by virtue of the statute of Virginia, the power to sell, given by the will to the executor, was legally transmitted to the administrator, and a contract having been made by such administrator to convey the lands in controversy to him, he is entitled to the aid of this court in procuring a legal title.
While we recognize an administrator appointed in another state, as we are bound by statute to do, his appointment being legally authenticated, we can not look to the laws of the foreign state appointing him, to ascertain the extent of his authority over prop *122 erty within this state; that is, and must be, subject only to our own laws. Over the lands of the testator in Ohio, Yirginia had no jurisdiction. She could prescribe no rule for the descent or disposition of them, nor could her legislature or courts confer any power *upon an individual to sell, convey, incumber, or in any manner affect the rights of the devisee or heir.
The court being of opinion that J. B. Baber had no power to sell or convey the lands of the testator, Parker, in Ohio, by virtue-of his appointment as administrator with the will annexed, the statute of Yirginia, and the power given in the will to the execu•tor to sell, it follows that the complainant acquired no interest, legal or equitable, in the lands in controversy, under the contract set forth in the bill.
This being the opinion of a majority of the court, and it going to the foundation of the complainant’s claim for a specific execution of the contract against the divisee, it is unnecessary to consider the various other questions made in the cause. Bill dismissed.